# 076043



**FILED**

DEC 1 3 2013

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| ) | No. _13-988_ C |
| **v.** ) | |
| ) | |
| ) | |
| **THE UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

The plaintiff, Information Systems & Networks Corporation ("plaintiff "or "ISN"), by its

undersigned attorneys, for its Complaint, alleges as follows, based on  the records, financial data

and files of ISN.

### Nature of Action

1. This is a consolidated action that combines various causes of action arising out

of 17 (seventeen) separate contracts between ISN and the defendant("the Contracts").  All of the

separate causes of action have been combined in this one case in the interest of substantial

justice.  Each Count of this Complaint constitutes a separate cause of action arising out of each

of the Contracts.  Each cause of action relies on identical authority for venue and jurisdiction.

The plaintiff and defendant are identical for each cause of action.  13 of the Contracts have been

the subject of a pending case in this Court styled Information Systems & Networks Corporation

1

v. U.S., assigned Case No. 06-387C("the Case") The contracts involved in the Case consist of F19628-82-C-0108, NAS5-27486, MDA903-84-C-0222, DAAK20-84-0149, N68335-84-D-0903, F19628-85-C-0043, 50SBNB5C3513, DTFA01-85-Y-01018, N00024-85-C-6258, DLAH00-85-C-0010, NASW-4164, MDA903-88-C-0702, and DAAK70-83-C-0145('the Original 13 Contracts"). The defendant did not challenge the jurisdiction of the Court over any one of the Original 13 Contracts. As a result of certain challenges made by the defendant to the jurisdiction of the Court over certain claims in the Case, the Amended Complaint in the Case was voluntarily dismissed without prejudice so as to permit ISN to file this action resolving the jurisdictional issues.. Because the defendant had a Counterclaim, however, the Court retained jurisdiction over the Case.. The Case has been stayed pending the filing of this Complaint. These claims herein provide the basis of this case, which includes similar claims to those filed in the Case (although money damages claimed in this Complaint are different) as well as adding additional claims, i.e. costs to be included in calculating final indirect cost rates, loss of profit allocated to each of the Contracts, loss of unabsorbed overhead allocated to each of the Contracts, as well as the added four additional contracts and claims which were not included in the Case. Those four additional contracts are MDA 908-83-G-1504, DASG60-85-C-0035, MDA903-87-C-0004, and N66604-87-D-0098("the 4 Additional Contracts").

2. The claims, as hereinafter alleged and described, consist of (a) ISN's request for a declaration that the adjustments for certain allowable costs included in the calculation of final indirect rates by ISN are proper and correctly calculated and should include, among other components, (i.) Final Indirect Rates resulting from the Settlement Agreement between ISN and the defendant dated November 10, 2010 arising from the case in this Court styled Information Systems & Networks Corporation v. United States, Case No. 06-99C ("the Rate Case"), (ii)

2

additional items such as the 'executive' compensation and 'other' compensation amounts which ISN claims are allowable,(iii) the reversal of the Defense Contract Audit Agency's ("DCAA") previously required and retroactively applied corporate allocations and reclassification of corporate administration expense allocations for calculation of billing rates and final indirect rates, (b.) direct labor ("DL"), other direct costs ("ODCs"), and indirect costs past due on each of the Contracts, within contract ceilings, billed to the defendant prior to the filing of this action and still remain unpaid, (c.) direct labor, other allowable indirect costs, and other entitlements billed on each of the Contracts, which are all within contract ceilings, but now as a result of the application of the actual Final Indirect Rates are now above contract ceilings in some of these claims, all of which sums have been billed to the defendant prior to the filing of this action and remain unpaid, (d.) invoices previously submitted to the defendant in the ordinary course of business, which remain unpaid, all submitted for payment several times over the years, along with amounts which were not to be billed as directed by DCAA under the suppressed DCAA approved billing rates, (e.) offsets and recoupments taken by the defendant against ISN prior to the filing of this action, (f.) unabsorbed overhead caused by delay in the determination of allowability of costs, which delay resulted in delay in contract performance, creating additional indirect costs due to unsettled Final Indirect Rates associated with the defendant's failure to close-out ISN's open contracts in a reasonable and timely manner consistent with the requirements of the Federal Acquisition Regulation ("the FAR"), thus continuing the need for contract administration of the Contracts during the delay in arriving at the Final Indirect Rates since the late 1980's, (g.) loss of profit damages due ISN on the loss of at least one follow-on contract due to the actions of the defendant, (h.) loss of profit damages resulting from the failure of the defendant to issue and/or negotiate in good faith Final Indirect Rates in a reasonable and timely manner consistent with the requirements

3

of the FAR, (i.) loss of profit damages arising from economic duress caused by defendant's interference in ISN's business relationships with various Government. agencies and delay in the payment of progress billings, (j.) loss of profit damages resulting from the defendant's breach of its duty of good faith and fair dealing and coercion, including, inter alia, requiring ISN to accept a change in accounting methodology which was improper and which caused the suppression of provisional indirect rates utilized in each of the Contracts, and taking offsets while negotiating the disallowances and Final Indirect Rates that had been carried by ISN, (k.) in the alternative, loss of profit damages resulting from economic duress sustained by ISN as the result of the bad faith of the defendant consisting of inaction, evasion of the spirit of the bargain, lack of diligence, abuse of power to specify terms, and interference with or failure to cooperate in ISN's performance of the Contracts,(l.) for additional financing expenses incurred by ISN as allocated to each of the 17 Contracts, ,(m.) for Prompt Payment Act Interest ("PPA Interest"), the allowable Contract Disputes Act ("CDA") interest, and Interest Penalties applied against the amounts found to be due ISN,,and (m.) for reasonable attorney's fees incurred by ISN and reimbursable under the Equal Access to Justice Act.

3.      This Court has jurisdiction, as hereinafter detailed, as a result of certain actions and inactions taken by the defendant:   First, the cognizant Administrative Contracting Officer ("ACO") of the Defense Contract Management Agency("DCMA")("DCMA ACO") issued a Final Decision pursuant to the FAR and the Contract Disputes Act of 1978, 41 U.S.C. Sec. 7101 et. seq. as amended ("CDA").   This Final Decision covered 11(eleven) of the contracts ISN included among the 17 Contracts set forth in the January 31, 2013 CDA Claim("the CDA Claim").   The CDA Claim was sent via Federal Express and was received by the ACO on February 1, 2013.   A copy of the CDA Claim is attached to this Complaint and incorporated herein by reference as

4

Exhibit A.  On May 20, 2013, a Final Decision was issued denying all claims on the 11 contracts claimed to be within the jurisdiction of the DCMA ACO.  A copy of the Final Decision is attached to this Complaint and incorporated herein by reference as Exhibit B.  As set forth in the DCMA ACO Final Decision, only 11 of the Contracts were determined to be within the jurisdiction of the DCMA ACO, despite the fact that 13 of the 17 contracts had all been previously determined jurisdictionally proper by both the DCMA ACO, the defendant, and this Court and were all contracts making up the 13 Original Contracts .

4.      Nevertheless, and to avoid any jurisdictional claims that could be asserted, as well as one additional contract, ISN re-served the CDA Claim to the designated contracting officers set forth in the six contracts which the DCMA ACO had claimed were outside of its jurisdiction. Two of the contracts, NSA5-27486 and NASW-4164, were then accepted by the contracting officer of NASA and became the subject of a Contracting Officer Final Decision dated June 4, 2013, a copy of which is attached to this Complaint and incorporated herein by reference as Exhibit C.   This Final Decision denied all ISN claims.  Two of the remaining four contracts , MDA 908-83-G-1504 and N68335-84-D-0903, were served and a response received from the Head of Contracting Activity, Defense Intelligence Agency, regarding MDA908-83-G-1504. The response generally denied the CDA Claim pertaining to that contract.  A response was received regarding N68335-84-D-0903 requesting a period of 9 months to respond to the CDA Claim.  ISN has treated this response as a deemed denial of the CDA Claim given the unreasonable length of time requested for a response.  The balance of two contracts, DTFA01-85Y-01018 and 50SBNB-85-C-3523, were returned to sender and could not be served on the designated contracting officer since the contracting officer designated  for these two  contracts apparently was either no longer associated with the specific agency, could not be located and the defendant provided no substitute,

and acceptance of the CDA Claim was refused. However, because these two contracts were part of the Original Contracts where jurisdiction had been obtained and no objection was made to jurisdiction over these contracts, as well as that the CDA Claim was submitted to the contracting officer for a decision and that any refusal of such letter was at the risk of the defendant, the Court should deem that service of the CDA Claim has been made and the contracting officer having refused to issue a final decision within the requisite 60 days, this Court has jurisdiction over these two contracts. Accordingly, this Court has jurisdiction over the 17 Contracts.

### The Parties

5.      Plaintiff ISN is a small, minority-owned business incorporated under the laws of the State of Maryland. ISN's corporate headquarters are located at 10411 Motor City Drive, Bethesda, Maryland 20817. ISN is an experienced Government contractor and has performed various contracts for the defendant in the field of computers, telecommunications, security system, systems integration engineering, and related fields. ISN provides its services, and has provided its services since 1980, to both the defendant and commercial clients.

6.      The defendant is the United States of America. The 17 Contracts which are the subject of this action involve different agencies of the defendant. However, there is no distinction between agencies as to requirements to pay invoices which have been timely and properly submitted; nor can the defendant assert any defense which is agency-specific to the claims made herein. At all times hereinafter mentioned, the defendant acted through the agency associated with a contract, or the Defense Contract Management Agency("DCMA") and or the Defense Contract Audit Agency("DCAA").

7.      The claims set forth in the CDA Claim are for payments and damages due under each of the 17 Contracts as well as due ISN, allocated to each of the 17 contracts and

6

proximately related to the final indirect rate issues and/or caused by the conduct and omissions of the defendant. Each of the 17 Contracts was awarded prior to October 10,1994. Accordingly, there is no statute of limitations applicable to ISN claims related to the contracts awarded before that date. The 17 Contracts were all awarded prior to October 10, 1994. Alternatively, all claims as hereinafter set forth were the subject of a CDA claim filed within six(6) years from the date the claim first accrued and became known to ISN. To the extent that certain claims set forth in this Complaint were the subject of a CDA claim filed on December 14, 2004 and thereafter incorporated in Case No. 06-387C in this Court, those claims tolled the applicability of any statute of limitations All of the amounts claimed herein rely on the calculation and resolution of Final Indirect Rates and because such calculation and resolution was not completed until the earliest of February 10, 2011, all of ISN's claims set forth in the CDA Claim are properly filed within the six-year statute of limitations. Additionally, because ISN reasonably relied upon the defendant to utilize the FAR procedures mandated by the applicable procurement regulations for resolving Final Indirect Rates, which the defendant failed to do, including, inter alia, Contracting Officer close-out or Auditor close-out procedures for the required Final Indirect Rates, the claims could not have been asserted at any earlier time and such conduct by the defendant tolled the running of the statute of limitations even if such statute of limitations is applicable.

## Jurisdiction

8.     This Court has jurisdiction over ISN's causes of action in that they are derived from and are set forth in ISN's CDA Claim. This Court has jurisdiction to render judgment upon any claim against the defendant founded either on the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the

7

defendant. 28 U.S.C. Sec. 1491(a)(1)(2006). The CDA authorizes this Court to adjudicate claims for monetary damages arising from disputes regarding any express or implied government contract for the procurement of goods and services. See 41 U.S.C. Sec.7104(b). A plaintiff must exhaust the administrative remedies available under the CDA by submitting a claim to and seeking a final decision from the contracting officer before filing suit. This Court's jurisdiction over a CDA claim is lacking unless the contractor's claim is first presented to the contracting officer and that officer either renders a final decision or fails to respond.

9.      On April 2, 2013, the DCMA ACO submitted a letter to ISN confirming that DCMA had contract administration authority over 11 of the Contracts and requested additional information from ISN on two of the claims set forth in the CDA Claim. On May 20, 2013, a Final Decision was issued by the DCMA ACO denying all claims of ISN on the 11 contracts. As a result of the jurisdictional position of the DCMA ACO on six of the Contracts, on April 5, 2013, ISN re-issued to the six contracting officers set forth in the contract files of each of the six contracts, the CDA Claim previously certified. This re-issuance was sent via Federal Express to the contracting officers of contracts NSA5-27486, 50SBNB-85-C-3523, N68335-84-D-0903, DTFA01-85-Y-01018, NASW-4164, and MDA-908-83-G-1504. In addition to transmitting to the record contracting officer the CDA Claim, the ISN's cover letter requested that if the contracting officer had been replaced, "you are required to provide your predecessor with this letter and enclosed CDA Claim."

10.      Regarding Contracts 50SBNB-85-C-3523, DTFA01-85-Y-01018, and MDA-908-83-G-1504, and N68335-84-D-0703, two of the contracts were part of the 13 Original Contracts in the Case wherein this Court exercised jurisdiction over them (MDA 908-83-G-1504 and N68335-84-D-0703). All reasonable attempts at service on the remaining two contract

8

designated contracting officers was nevertheless attempted without success. Given that the defendant stipulated to the jurisdiction of the Court and that the Court therefore had exercised jurisdiction over those two contracts in the Case, this Court should deem that service of the CDA Claim was properly made and that the failure of the defendant to accept service constitutes a waiver of any jurisdictional argument which could be asserted regarding these two contracts (50SBNB-85-C-3523 and DTFA01-85Y-01018).

11.     This action is brought directly in this Court within twelve (12) months of the date the cognizant contracting officers issued a Final Decision, or were required by statutory time limitations to either issue a Final Decision or notify the contractor, within that period, of the time within which a decision will be issued and neither event occurred. Thus, jurisdiction lies in this Court pursuant to 28 U.S.C. Sec. 1491(a)(1-2), Contract Disputes Act(41 U.S.C. Secs.7101-7109), as well as FAR 52.233-1. To the extent that the defendant has not issued a Final Decision covering two of the Contracts, this failure constitutes a waiver of any defense regarding this Court's jurisdiction, including any defense premised on the statute of limitations or collateral estoppel. In the alternative, the defendant is estopped from asserting such defenses because of the failure to issue a Final Decision pertaining to the four particular contracts.

12.     Regarding the two contracts where service on the contracting officer could not actually be made, such service is deemed to have been made. While presentment of claims to a contracting officer is a prerequisite to filing suit in this Court, the submission requirement is met if the contractor (ISN) sends the CDA Claim directly to the contracting officer (which ISN did) if the contractor sends a proper claim to its primary contact with a request for a final decision of the contracting officer and a reasonable expectation that such a request will be honored. The defendant cannot avoid its jurisdictional obligation to receive and/or accept a CDA Claim

9

submitted to the contracting officer set forth in the specific contract by simply avoiding acceptance of the delivery.

13.     ISN seeks money judgments for the amounts claimed in each of its Counts as set forth herein.  To the extent the Court must resolve certain Final Indirect Rate issues as a predicate to rendering a monetary judgment, then to that extent ISN would claim entitlement to a declaratory judgment under the Tucker Act, 28 U.S.C. Sec. 1491(a)(2)(1994) as to the proper final indirect costs that should be utilized by ISN in all of the calculations of its claims and damages.  This Court has jurisdiction to render judgment on both monetary and non-monetary claims brought in this Court under the CDA, based on denials or deemed denials of a contractor's claims to the ACO under 41 U.S.C. Sec. 7104.  To the extent any of ISN's claims requires a declaratory judgment, such claim for a declaratory judgment appealing a deemed denial of claims by the ACO's failure to render a Final Decision falls within the Court's jurisdiction over "nonmonetary claims."

<b><u>Facts Common to All Counts</u></b>

14.     This case involves claims under the following contracts:

Contract No. F19628-82-C-0108

Contract No. NSA5-27486

Contract No. MDA908-83-G-1504

Contract No. MDA903-84-C0222

Contract No. DAAK20-84-C-0149

Contract No. N68335-84-D-0903

Contract No. DASG60-85-C-0035

Contract No. F19628-85-C-0043

10

Contract No. 50SBNB-85-C-3523

Contract No. DTFA01-85-Y-01018

Contract No. N00024-85-C-6258

Contract No. DLAH00-85-C-0010

Contract No. NASW-4164

Contract No. MDA903-87-C-0004

Contract No. MDA903-88-C-0702

Contract No. DAAK70-83-C-0145

Contract No. N66604-87-D-0098(heretofore collectively " the 17

Contracts" or "the Contracts.").

All 17 Contracts were cost-reimbursement contracts as defined in the applicable procurement

regulations and all funding provided after April 1, 1984, was subject to the procurement

regulations of the FAR.. Even though each of these contracts was awarded during the FY 1982-

1987 period and each ended during the FY 1985-1992 period, the funding was governed by the

FAR which was effective April 1, 1984. Under the FAR, such cost reimbursement contracts

provided the contractor financing through bi-weekly payments (and if a small business, more

frequently than bi-weekly) for the reimbursement of allowable incurred costs, as were being

incurred by the contractor, to the extent prescribed in each contract's Estimated Cost Ceiling.

15.    Upon the signing of the Contracts, the defendant was aware of the indirect rates

that ISN had bid and its accounting methodology, and ISN's incurred cost expenses to fully

perform the Contracts were based on this established accounting methodology, and the bi-weekly

reimbursement of costs pursuant to the Contracts' provisions.

16.    ISN incurred expenses to fully perform the Contracts in reliance on the defendant's

11

reimbursement of allowable costs within contract ceilings. Each of the contracts had amendments for additional funding for continuing performance of the contracts. ISN submitted interim vouchers/requests for progress payments  for payment and provided annually its Incurred Cost Submissions("ICS") to settle indirect rates with the defendant for contract close-outs. 17.

The defendant did not make payments to ISN in accordance with the provisions governing payments and cost allowability in the FAR or the contractual provisions.  In addition, during ISN's performance of the Contracts, DCAA examined ISN's books and records to determine allowable costs, but rather than resolving internal audit disagreements with the ACO as required, the DCAA suspended amounts due under the Contracts through the issuance of various Form 1s.

18.    DCAA also reduced ISN's provisional rates and delayed ISN's bi-weekly payments, and upon information and belief, also advised paying agencies to lengthen payment times to ISN to increase pressure on ISN to agree with the reduction in billing rates.

19.    DCAA also failed to honor an Advance Agreement entered into between ISN and the ACO for certain costs and forced an implementation of an accounting methodology which included an oppressive rate structure which excluded certain allowable cost elements such as executive compensation.

20.    This resulted in amendments to the Contracts by the contracting agencies which incorporated the suppressed billing rates and ultimately resulted in significant underpayments to ISN. The DCAA also required that this methodology be made retroactive, which was not in accordance with the FAR.

21.    Throughout this time, the defendant failed to issue audit reports, and when the audits were ultimately performed they were negligently conducted which caused additional

accounting expenses to ISN.

22.     All of these actions by the DCAA contradicited the cost principles in the FAR.

23.     As payments by the contracting agencies on the Contrats were based on improperly suppressed indirect rates, ISN had to subsidize/finance its allowable costs to perform the work within the Contracts' suppressed ceilings. ISN had to borrow almost 40% of the Contracts' values to alleviate cash flow problems so that deliverables would nto be delayed and work performance for the defendant would not be impacted.

24.     Since the ACO did not determine allowable costs in a timely manner, which was a basic requirement of all of the 17 Contracts this caused an unforeseeable delay, thus preventing timely reimbursements. ISN had to incur additional overhead expenditures in contract management, and related costs, while financing the allowable costs, which had been spent directly on the Contract work, for which the defendant did not adequately reimburse. These financing costs/cost of borrowings were incurred under each of the Contracts' Changes Clause and are required to be reimbursed to ISN as a form of equitable adjustment, if not awarded as an Interest Penalty.

25.     In addition to the foregoing actions of the defendant, DCAA delayed thACO's ability to determine allowable costs in a timely manner pursuant the contractualrequirements, which thus prevented timely reimbursements. As a result, ISN incurred additional overhead expenditures in contract management and related costs. ISN also financed the allowable costs, which had been spent directly on Contract work, for whichdefendant did not adequately reimburse.

26.     Further, the Contracts could not be closed until the DCAA had agreed with ISN

13

on the Final Indirect Rates. This delay in the close-out of the Contracts also damaged ISN because ISN had to incur additional administrative costs associated with maintaining the Contracts and responding to DCAA requests for information.

27.    All of the foregoing actions of the defendant created economic duress on ISN and caused financial damage.

28.    When it became clear to ISN that the defendant would not settle the dispute over cost allowances, it filed the necessary CDA Claim and proceeding to file the Rate Case when the ACO issued a Final Decision denying all of ISN's Final Indirect Rate claims.

29.    When the Rate Case was settled in November, 2010, the defendant prepared proposed Final Indirect Rates and provided them to ISN in February, 2011. The Indirect Rate Agreements that were provided did not provide any explanation of the basis of the rates, or the calculations used by the defendant in arriving at the Final Indirect Rates.

30.    ISN finally obtained the defendant's calculations of the proposed Final Indirect Rates from discovery taken in the 13 Contracts Case.

31.    After obtaining the defendant's calculation of the proposed Final Indirect Rates, ISN discovered errors in the calculations. As a result, ISN was required to prepare its own final Indirect Rates which cured the errors it had found in the defendant's calculations.

32.    The errors included, inter alia, the failure to include executive compensation, the failure to include state tax expenditures, application of cost allocations to overhead and G&A pools which were improper.

33.    The defendant was unable to explain why its calculations of Final Indirect Rates did not include these cost elements.

14

34. ISN then proceeded with the preparation of its final Close-Out invoices on each of the 17 Contracts.

35. These final Close-Out invoices utilized ISN's Final Indirect Rates and reflected interim billings that had been unreasonably low because of improper accounting methods of corporate allocations and re-classifications utilized by DCAA.

36. On November 1, 2012, ISN mailed to each of the contracting agencies, which were the issuing agencies on each of the 17 Contracts, final close-out invoices. Each invoice was prepared on Standard Form 1034 and was accompanied by Standard Form 1035. The Standard Form 1035 consisted of ISN's Cumulative Claim Reconciliation Statement for each invoice. Also attached were worksheets setting forth the calculations based on the audited and allowable direct and indirect costs incorporating the defendant's proposed and ISN's corrected Final Indirect Rates, the appropriate delay period, a calculations of the daily rate under the application of the Eichleay formula, the adjusted cost based on this daily rate, the add-back of offsets taken, the additional financing costs of the allowable cost incurred amounts due that remained unpaid, as well as the applicable Prompt Payment Act("PPA") interest, Interest Penalties and CDA Interest. All 17 invoices, one for each of the 17 Contracts, was then mailed to the designated billing office set forth in each of the contract files of ISN. To the extent that the invoices were also required to be submitted to a Disbursing Office, a second set of invoices were submitted to such Office.

37. Copies of the 17 Contracts invoices were also Federal Expressed to the ACO on November 1, 2012 and were received by the ACO the morning of November 2, 2012. The ACO failed to acknowledge or otherwise address the 17 Contract invoices.

38. The 17 Contracts invoices were prepared pursuant to applicable FAR provisions,

15

contract terms of each of the 17 Contracts and the Contract Closeout Guidelines of the Defense

Contract Management Agency dated September, 2011. The invoices were submitted pursuant to

the Settlement Agreement which arose from <u>Information Systems & Networks Corporation v.</u>

<u>United States,</u> Case No. 06-99C in this Court("the Rate Case"). Paragraph 11 of the Settlement

Agreement provides that ISN released the defendant from all claims for monetary and

declaratory relief arising out of, set forth, related to, or otherwise involved in the Rate Case,

"with the exception of claims for payment resulting from the Government's calculation of final

indirect rates that ISN might present to the agencies with which it contracted." All of the 17

Contracts invoices set forth claims for payment resulting from the calculation of final indirect

rates which are therefore required to first be submitted to the agencies with which ISN

contracted.

39.     Each of the 17 invoices were required to be processed and paid within at least 45

days of receipt. None of the 17 invoices have been paid. ISN has not been advised or informed

that such payment will be issued to satisfy any invoice. ISN therefore treated each of the 17

invoices as declined, rejected and unpaid therefore requiring the filing of a CDA Claim to pursue

payment.

### **Necessary Background for the CDA Claim**

40.     On December 14, 2004, ISN first filed a Contract Disputes Act claim addressing

19 open contracts("the 2004 CDA Claim"), and asserted various contract damage claims

associated with each of the 19 contracts set forth. In addition, ISN demanded the establishment

of final indirect billing rates so it could prepare and issue close-out invoices on all of its open

contracts (including the 19 which were the subject of the 2004 CDA Claim). On February 5,

2005, the ACO issued his final decision. The ACO did not reject the 2004 CDA Claim. To the

contrary, the final decision set forth the issues that were required to be resolved to establish the final indirect rates and set forth the ACO's position on each of the issues raised. In a separate final decision issued on May 11, 2005, the ACO denied all contract-based claims, holding that without final indirect rates, the quantum of ISN's damage claims could not be determined.

41.     The two final decisions resulting from the 2004 CDA Claim resulted in ISN filing two separate cases in this Court. The first case, previously described herein as the Rate Case, was filed on February 8, 2006 and claimed relief regarding the failure of the defendant to issue final indirect rates and addressed five disputed final indirect rate issues, related to excessive disallowances, which were frivolous, but were required to be resolved prior to the commencement of the FAR mandated final indirect rate determination process. These were the five disputed issues set forth by the ACO in his final decision. During the pendency of the Rate Case, ISN filed a motion to amend its complaint to assert entitlement to a money judgment for the disallowed indirect rate equivalents rather than utilizing the billing process to obtain the reimbursement of the costs. This Court granted the motion. Prior to the commencement of trial, the Rate Case was settled wherein the defendant stipulated to ISN's position on the five indirect rate issues. This resulted in the Settlement Agreement which attempted to quantify the amounts on the five issues that should be included in the cost pools for determining final indirect rates. However, the Settlement Agreement was silent on the process which would be utilized for determining the final indirect rates, the protocol that would be used if the rates calculated by the defendant were not acceptable to ISN, and the resolution of other indirect rate issues which had not been made a part of the Settlement Agreement.

42.     The second case resulting from the 2004 CDA Claim was filed by ISN on May 11, 2006 and sought relief on 19 open cost-reimbursement contracts. Subsequently, six of the

17

contracts were found to have been improperly included, but an additional four were added

bringing the total to 17 contracts.  The case in this Court, previously referred to as the Case,

(Information Systems & Networks Corporation v. United States, Case No. 06-387C) was then

stayed by the Court pending resolution of the Rate Case because Final Indirect Rates were a

necessary component in the formulation of damages in the Case.  Ultimately, after the resolution

of the Rate Case via the Settlement Agreement, the stay was lifted by the Court.

43.     As a resulted of the Stay being lifted, the parties proceeded with discovery.

44.     As a result, ISN received the calculations from the ACO, and ISN located errors

in the calculations provided.  ISN learned that there were various problems in the calculations

prepared by the defendant which the DCAA had been basing its decisions on for several prior

years, without letting ISN know the meaning of their proposed significant disallowances.

Accordingly, and so as to enable it to prepare its damage claims in the Case, ISN used its own

resources in preparing final indirect rates which cured the errors it had found in the defendant's

final rates as well as other audited and allowable costs which should have been included in the

cost pools.

45.     Prior to the final Pretrial Conference in the Case before the trial of the case

scheduled for November 5, 2012, the defendant filed four separate motions raising jurisdictional

issues (ie. motions in limine) with certain of the claims being asserted by ISN including certain

components of ISN's calculations of the Final Indirect Rates.  In an effort to avoid an

unnecessary trial where complete relief may not have been available to ISN, it was agreed with

the defendant that the Case would be voluntarily dismissed allowing ISN to properly raise all of

its contract claims including any issues over the calculation of final indirect rates in a manner

which would not be subject to jurisdictional dispute.  The preparation of the 17 Contracts

18

invoices and their submission to the defendant, the filing of the CDA Claim, and filing of this Complaint are consistent with the purpose for the voluntary dismissal.

46.     ISN's claims are in part based on its ICSs submitted to the DCAA after expiration of the fiscal years covered by the particular ICS. No attempt was made by DCAA to audit the ICSs in a timely manner.

47.     Each ICS from 1985 relied upon by ISN has been audited by DCAA during 1994-2001, and almost all of these Audits have been revised and Supplementary Audit Reports have also been submitted.

### COUNT I
### (For Declaratory Judgment That ISN's Final Indirect Rates
### And All Costs Included Therein Are Proper)

48.     This Count I seeks a declaratory judgment that the calculation by ISN of its Final Indirect Rates for the outstanding years (1982-2000) is proper and all components and calculations in determining such Final Indirect Rates are proper. It also seeks a monetary judgment representing the equivalent of any differential in rates between those calculated by ISN and those used in prior billings,, which include unbilled amounts and any other modifications made by any decision of this Court on this Count I.

49.     ISN repeats and re-alleges paragraphs 1-47 of this Complaint as if fully set forth herein.

50.     In addition to the agreed upon allowable costs and the disallowances stipulated and agreed to in the Settlement Agreement in the Rate Case, ISN has added to the relevant cost pools for each of the outstanding years additional claimed and incurred allowable costs adjusted

19

per the FAR for "Other Compensation." The methodology utilized was the same as that implemented in the ISN system and approved by the ACO for the Years 1981 to 1987. ISN requests that this Court determine that the inclusion of these costs in the relevant cost pools is necessary as close-out adjustments, and therefore allocable under the FAR and as applicable to each of the 17 Contracts.

51.     ISN also utilized in its calculations a reversal of corporate allocations originally set forth in the ACO's Final Decision of February 9, 2005 for years 1992-1995 and thereafter for 1996-2000. . The reversal of the corporate allocations from the determination of the ACO for the years 1992-1995 is reasonable under the FAR. Further, the corporate cost allocations made by ISN during the period FY1988-1991were approved by the ACO at the time and subsequently upheld by the ACO in the Final Decision of February 9, 2005. However, the defendant has reversed its position regarding its proposal of Final Indirect Rates. These changes cause adjustments to the applicable G&A Rate and Overhead Rate of ISN's Final Indirect Rates for each of the outstanding years. ISN requests that this Court determine that the reversals of corporate allocations are proper and reasonable and can be utilized in ISN's calculation of Final Indirect Rates.

52.     In addition to ISN's inclusion of all allowable costs in determining Final Indirect Rates, as required under the FAR, ISN claims that its calculation of such Final Indirect Rates is proper and includes all the necessary components.

53.     ISN's Final Indirect Rates are accurate and properly reflect the Final Indirect Rates that ISN is entitled to use and has used in its 17 Completion Invoices as submitted to the defendant as well as with all other calculations of ISN's damages and claims as set forth herein. ISN's Claimed Final Indirect Rates Applicable to Years 1982-2000 are set on the Schedule

attached as Exhibit D.

54.     The Final Indirect Rates as calculated by ISN include an adjustment of at least

$3.7 million in additional costs from the costs included by the defendant in its calculations.

55.     ISN requests that the Court declare and find that its Final Indirect Rates are

correctly calculated and include all allowable costs and apportionments as mandated by the FAR,

applicable law, applicable contract provisions and cost accounting standards.

## COUNT II
### (For Monetary Judgment On Completion Invoices
### Submitted on Each Contract)

56.     This Count II seeks a money judgment for the amounts set forth on the 17

Completion Invoices previously submitted as amounts unpaid by the defendant for payment.

57.     ISN repeats and re-alleges paragraphs 1-55 of this Complaint as if fully set forth

herein.

58.     On November 1, 2012, ISN re-submitted to the defendant through each of the

contracting agencies and the designated billing offices, a final completion and close-out invoice

on each of the 17 Contracts which are the subject of this case. None of these invoices have been

paid, either in full or partially.

59.     Therefore, the invoices are deemed rejected and denied.

60.     The amounts in the invoices are calculated correctly and all costs are allowable.

Attached as Exhibit E and incorporated herein by reference is a Schedule of Contract Costs

Within Contract Limitations.

61. ISN seeks judgment against the defendant on this Count II in an amount no less than

$7,000,000.

### COUNT III
### (For Monetary Judgment Equal To Offsets with Interest
### Taken On Invoices Submitted On Each Contract)

62.     This Count III seeks a monetary judgment for various offsets taken by the

defendant on ISN invoices previously submitted to the defendant in the ordinary course of

performance on the 17 Contracts.

63.     ISN repeats and realleges paragraphs 1-61 of this Complaint as if fully set forth

herein.

64.     During the course of performance of the 17 Contracts, ISN submitted invoices

pursuant to the terms of each of the Contracts.  Certain of the invoices were partially paid, but

offsets against the invoices were taken by the defendant without justification or basis. These

offsets were not in accordance with the Contracts' provisions.  This conduct was a breach of the

Contract terms. Allowable costs since 1982 have not been paid to date. These offsets total in the

aggregate at least $475,845.  These offsets increased the financing costs of ISN as all unpaid

allowable costs had to be previously financed.

65.     These combined withholdings were in error, and there is no basis for not paying

ISN in accordance with the terms of the Contracts.  Attached as Exhibit F and incorporated

herein by reference is a Schedule of Offsets for each of the 17 Contracts.

66.     ISN seeks judgment against the defendant on this Count III in an amount no less

than $475,000 for the amount of Offsets,  plus appropriate Interest from the date that the offset

was taken, until the date it is paid, which is no less than $465,000, and CDA Interest.

### COUNT IV
### (For Monetary Judgment for Overhead
### Incurred On Each of the 17 Contracts)

22

67. This Count IV seeks a monetary judgment for Unabsorbed Overhead incurred by ISN as a direct result of the conduct of the defendant as heretofore alleged applicable to each of the 17 Contracts.

68. ISN repeats and realleges paragraphs 1-66 of the Complaint as if fully set forth herein.

69. The delays imposed by the DCAA caused ISN to expend dollars on overhead to maintain all of its books and records in proper order and to respond to DCAA's excessive audits.

70. In addition, DCAA contacted ISN's clients regarding the unresolved audit issues and urged ISN's clients not to do business with ISN. As a result, ISN's clients suspended their contracts due to the concerns of DCAA which had no basis. All of this created overhead burden since the resolution of the Final Indirect Rates and disallowances were being treated as direct labor on the ongoing projects.

71. As a result of defendant's conduct which caused constructive suspensions of continued performance under the Contracts, ISN had ceased to incur direct costs under the Contracts. As a result, ISN could not recover the proportional share of these costs which had been originally allocable to each of the Contracts. That share of ISN's home office overhead is therefore said to be "additional indirect costs" or "unabsorbed" from the day performance ceased to date.

72. The defendant had final authority to approve invoices for payments and was knowledgeable of each Contract's cash flow deficiencies, which was a burden to ISN.

73. Upon information and belief, had the ACO acted reasonably and in compliance with the applicable law and regulations, ISN would have resolved the disputed cost allowances which would have allowed ISN to issue completion invoices.. This intentional and unlawful

23

delay by the defendant caused ISN to maintain its Home Office so that when and if ISN could issue completion vouchers, it was in position to do so with the appropriate files and documents necessary.

74.     As a result of the foregoing, ISN is entitled to compensation for this delay consisting of unabsorbed home office overhead ("Unabsorbed Overhead").

75.     The United States Court of Appeals for the Federal Circuit has established the so-called EICHLEAY formula as the _exclusive_ methodology for calculating a contractor's unabsorbed overhead during the period of defendant-caused delay. Accordingly, ISN has used the EICHLEAY formula in calculating its Unabsorbed Overhead claim under each of the 17 Contracts. Attached as Exhibit G and incorporated herein by reference is the Daily Rate of overhead costs utilized in calculating the loss of Unabsorbed Overhead. Attached as Exhibit H incorporated herein by reference is a Schedule of each of the 17 Contracts loss of Unabsorbed Overhead.

76.     During this same period of time, ISN was unable to bid on additional work because it did not have the Final Indirect Rates and DCAA had urged contracting agencies not to do business with ISN.

77.     ISN claims a monetary judgment for the amounts of Unabsorbed Overhead under each of the 17 Contracts as follows:

> Under Contract No. F19628-82-C-0108 at least $3,413,000.
>
> Under Contract No. NSA5-27486 at least $2,186,000.
>
> Under Contract No. MDA908-83-G-1504 at least $1,046,000.
>
> Under Contract No. MDA903-84-C-0222 at least $9,053,000.
>
> Under Contract No. DAAK20-84-C-0149 at least $562,000.

Under Contract No. N68335-84-D-0903 at least $99,000.

Under Contract No. DASG60-85-C-0035 at least $605,000.

Under Contract No. F19628-85-C-0043 at least $535,000.

Under Contract No. 50SBNB-85-C-3523 at least $1,662,000.

Under Contract No. DTFA01-85-Y-01018 at least $717,000.

Under Contract No. N00024-85-C-6258 at least $1,120,000.

Under Contract No. DLAH00-85-C-0010 at least $1,492,000.

Under Contract No. NASW-4164 at least $1,352,000.

Under Contract No. MDA903-87-C-0004 at least $1,276,000.

Under Contract No. N66604-87-D-0098 at least $2,6320,000.

Under Contract No. MDA903-88-C-0702 at least $5, 759,000.

Under Contract No. DAAK70-83-C-0145 at least $1,509,000.

78.    The delay period utilized in the calculations of the Unabsorbed Overhead as heretofore set forth commences when each designated contract was suspended and continues to date.

79.    ISN seeks judgment against the defendant in an amount no less than each of the amounts set forth in this Count herein collectively totaling in excess of $35,000,000.

## COUNT V
## (For Monetary Judgment For Loss of Profit
## On Loss of Follow-On Contracts

80.    This Count V seeks monetary judgment for loss of profit on certain of the follow-on contracts among the 17 Contracts.

81.    ISN repeats and realleges paragraphs 1-79 of this Complaint as if fully set forth

herein.

82.     Contract No. F19628-82-C-0108 provided for a follow-on contract to be entered into between the defendant and ISN on completion of the performance on the underlying contract as set forth herein. The follow-on consisted of gross revenue of at least $13,000,000 with a profit margin of $1,300,000. As a result of the conduct of the defendant as heretofore alleged, the defendant did not enter into the follow-on contract with ISN despite the fact that ISN had properly performed the underlying contract.

83.     Upon information and belief, ISN alleges that the defendant did not enter into the follow-on contract because of the cost issues which the defendant first created, either in bad faith, or through its own arbitrary and capricious actions, then refused to legally resolve.

84.     The defendant breached the underlying contract by not properly resolving the allowable cost issues, which led to the defendant's failure to enter into the follow-on contract. The amount of profit on the follow-on contract was calculable with reasonable certainty.

85.     ISN seeks judgment against the defendant on this Count V in an amount no less than $2,300,000, plus appropriate CDA Interest

## COUNT VI
### (For Monetary Judgment For Loss of Profit Due to Defendant's Withholding Of Final Indirect Rates)

86.     This Count VI seeks a monetary judgment against the defendant for loss of profit damages sustained by ISN as allocable to the 17 Contracts.

87.     ISN repeats and realleges paragraphs 1-85 of the Complaint as if fully set forth herein.

26

88.     Implicit in every Government contract is the duty of good faith and fair dealing which obligates ISN and the defendant not "do anything that will hinder or delay the other party in performance of the contract." The duty of good faith and fair dealing encompasses a duty not to hinder contract performance. Generally, a failure to cooperate with the other party in the performance of a contract serves as a breach of that contract because a failure to cooperate violates the duty of good faith. In the discharge of this duty, a party is not to interfere with the other party's performance and is not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.

89.     Each of the 17 Contracts included provisions requiring the defendant to cooperate with ISN administratively for the duration of each Contract.

90.     Pursuant to FAR 42.705-1, the contracting officer is required to negotiate with the contractor and implicit in this requirement is that the negotiations be conducted in good faith. The defendant failed to negotiate with ISN Final Indirect Rates in good faith. This failure to allow ISN's 17 Contracts to remain open without being closed and finally paid was not fair dealing.

91.     The impact of the above actions during the period 1986-2000 continued until the Contracts awarded to ISN from the defendant ended with respect to performance or because neither follow-ons nor additional business was possible as Final Indirect Rates were not finalized.

92.     The defendant's intentional, /negligent, and improper withholding of Final Indirect Rates constituted a de facto debarment of ISN without due process provided to ISN because ISN could not bid on or enter into contracts with Final Indirect Rates pending.

93.     ISN has calculated its loss of profit directly caused by the defendant's conduct

utilizing methodologies recognized and considered appropriate in this instance. ISN compared its financial performance during the period ISN was not contractually impacted by the lack of final indirect rates with its financial performance during the period in which it was impacted. In addition, ISN compared its growth rate with other companies similarly situated so as to confirm the percentages utilized and to further confirm the growth rate developed for ISN based on a regression computation. ISN's calculations support and establish a loss of profit of at least $30,000,000. Attached as Exhibit I and incorporated herein by reference is the Schedule of Claimed Amounts for Loss of Profit under each of the 17 Contracts.

94.     ISN seeks judgment against the defendant on this Count VI in an amount no less than $30,000,000 plus appropriate CDA Interest.

## COUNT VII
### (For Monetary Judgment For Loss of Profit Due to Defendant's Breach of Contract including the Duties of Good Faith and Fair Dealing)

95.     This Count seeks a monetary judgment for loss of profit due to defendant's breach of the duties of good faith, fair dealing and cooperation either explicitly or implicitly set forth in each of the 17 Contracts.

96.     ISN repeats and re-alleges paragraphs 1-94 as if fully set forth herein.

97.     The defendant failed to provide timely determination of the allowability of costs or to resolve any dispute over such allowability. Defendant also delayed applying designated auditors' recommendations and made, in bad faith, allegations to ISN's clients that cost related issues needed to be resolved, but then refused to participate in such resolution. This conduct resulted in contract suspensions and eventual terminations even though the agencies wanted to continue working with ISN.

98.     ISN has calculated its loss of profit directly caused by the defendant's conduct

utilizing methodologies recognized and considered appropriate regarding the breaches of duty

alleged.  ISN compared its financial performance during the period ISN was not impacted by the

defendant's conduct with its financial performance during which it was impacted.  In addition,

ISN compared its growth rate with other companies similarly situated so as to confirm the

percentages utilized and to further confirm the growth rate developed for ISN based on a

regression computation.  ISN's calculations support and establish a loss of profit of at least

$30,000,000 as allocable to the subject 17 Contracts.  See Exhibit I previously incorporated.

99.     ISN seeks judgment against the defendant on this Count VII in an amount no less

than $30,000,000 plus appropriate CDA interest.

## COUNT VIII
### (For Bad Faith for Defendant's Actions and/or Inactions Causing Economic Duress)

100.     This Count seeks a monetary judgment for the defendant's bad faith in its actions

and/inactions toward ISN.  This Count is offered as an alternative to Count VII,

in the event the Court concludes that the applicable law requires that in the case of economic

duress, ISN must prove bad faith on the part of the defendant or to overcome the presumption

that the defendant's officials acted in good faith, must prove by clear and convincing evidence

that the defendant had a specific intent to injure ISN.

101.     ISN repeats and realleges paragraphs 1-99 of the Complaint as if fully set forth

herein.

102.  The conduct of the defendant described in Count VII consisted of wrongful acts of

the defendant and coerced ISN into a position of submission.  The defendant required ISN to

utilize low and unreasonable provisional billing rates for its invoicing and it delayed needed progress payments unless ISN complied. This substantially increased the necessity of ISN financing its allowable costs. In addition, the defendant reqired ISN to reclassify its corporate administrative expenses to further reduce its billing rates and unilaterally and without notice took baseless offsets against ISN's billings.

103. The defendant's conduct, collectively, was a course of conduct that was "decidedly oppressive" or that "initiated a conspiracy" to "get rid" of ISN

104. ISN has calculated its economic duress damages directly caused by the defendant's conduct utilizing methodologies recognized and considered appropriate in this instance. ISN compared its financial performance during the period ISN was not subject to the economic duress with the period it was subjected to the economic duress. In addition, ISN compared its growth rate with other companies similarly situated so as to confirm the percentages utilized and to further confirm the growth rate developed for ISN based on a regression computation. ISN's calculations support and establish a loss of profit of at least $30,000,000. See Exhibit I previously incorporated.

105. ISN seeks judgment against the defendant on this Count VIII in an amount no less than $30,000,000 plus appropriate CDA interest.

## COUNT IX
### (For Monetary Judgment On Financing Costs Incurred on Borrowings)

106.    This Count IX seeks a monetary judgment for financing costs of ISN's borrowings, such borrowings directly caused by the conduct of the defendant.

107.    ISN repeats and realleges paragraphs 1-105 of the Complaint as if fully set forth

30

herein.

108. The defendant, pursuant to the applicable provisions of each of the 17 Contracts and applicable provisions of the FAR and other appropriate regulations, including those for small businesses, had agreed to provide financing to ISN for contract performance in the form of monthly progress payments. The defendant failed to make such monthly progress payments as required or alternatively, arbitrarily reduced such progress payments. In addition, the defendant suppressed Provisional Billing Rates and otherwise manipulated such rates to the disadvantage of ISN by requiring improper re-classifications and corporate allocations which would result in the suppression of the actual allowable costs by resulting in reduced provisional indirect rates. The defendant thus prevented ISN from claiming appropriate equitable adjustments on contracts where such adjustments were necessary and should have been approved. All of this conduct as heretofore described impacted ISN's cash flow, requiring ISN to borrow from third parties which included third party sources such as its sole stockholder who utilized her equity in ISN to pay for contract performance of ongoing contracts.

109. The defendant's conduct in withholding payments was wrongful and was undertaken in an attempt to improperly coerce ISN into accepting suppressed billing rates.

110. In order to perform the additional work under the Contracts, payments were required to finance ISN's performance.

111. When ISN did not receive its payments, it incurred damages by having ot finance the performance itself at a loss in order to perform the work that the defendant directed ISN to perform.

112. Addionally, the defendant suppressed Provisional Billing Rates and otherwise manipulated such rates to the disadvantage of ISN by requiring improper re-classifications and

corporate allocations.

113.   The defendant thus prevented ISN from claiming appropriate equitable adjustments where such adjustments were necessary and should have been approved.

114.   ISN incurred interest on such borrowings which constitutes an allowable cost. Total borrowings allocable to the 17 Contracts were at least $3,100,000. Total interest incurred by ISN on the borrowings during the period they have been outstanding and unpaid  was at least $10,000,000.

115..   ISN also claims in the alternative that interest on borrowings is recoverable pursuant to the Changes Clause in each of the 17 Contracts.  Such Changes Clause waives the no interest rule by providing for an equitable adjustment for any increased costs that result from a government-directed charge.  ISN claims that it has taken out specific loans to finance  work and that it will demonstrate the specific necessity to increase its general business borrowings as a result of the changed work as well as resulting from the conduct of the defendant as heretofore alleged.

116.   ISN seeks judgment against the defendant on this Count IX in an amount no less than $10,000,000.

## COUNT X
### (For PPA,  CDA Interest, and Interest Penalties)

117.   This Count X seeks a monetary judgment for appropriate interest on the amounts awarded against the defendant including, Prompt Payment Act interest ("Prompt Payment Interest"), Interest Penalties and CDA Interest.

118.   ISN repeats and realleges paragraphs 1-116 of the Complaint as if fully set forth herein.

119.    As set forth in Count II , ISN has invoiced the defendant for various amounts due and owing ISN and unpaid, despite proper invoices having been presented to the defendant for payment multiple times over the years. All invoices previously submitted by ISN were properly submitted to the cognizant agency and its designated billing office and contained or was accompanied by all necessary documentation. The defendant failed or withheld payment on such invoices.

120.    All invoices submitted by ISN to the defendant as set forth in Counts II and III heretofore applied to the 17 Contracts  were for the procurement of property or services entered into for the benefit of the defendant.

121.    As a result of the failure of the defendant to pay the invoices in accordance with the law, defendant is obligated to ISN for interest penalties pursuant to 31 U.S.C. Sec.3902, and regulations promulgated pursuant to Sec.3903 and the FAR.    Therefore, defendant is obligated to ISN for the interest penalties in 31 U.S.C. Sec. 3907 for a period of one year after each of the invoices was due to be paid by the defendant, and an additional interest penalty thereafter until the filing of the CDA Claim on January 31, 2013. Attached as Exhibit J and incorporated herein by reference is a Schedule of Entitlements to PPA, CDA and Interest Penalties on the unpaid invoices.

122. ISN is entitled to CDA interest on all amounts found to be due under Counts I-X of this Complaint..

123.    ISN claims entitlement to Interest Penalties as a form of equitable adjustment to each of the 17 Contracts in light of the period of time from when the one(1) year PPA Interest terminates and the applicable CDA Claim was filed. Each of the 17 Contracts included a Changes Clause which waived the no interest rule by providing for an equitable adjustment for

33

any increased costs that results from a government-directed change. The failures of the defendant as set forth herein constitute a contract change.

124.     ISN seeks judgment against the defendant in the amounts of Prompt Payment Interest, CDA Interest and Penalty Interest computed against the judgments awarded to ISN in this case.

## COUNT XI
### (For Court Awarded Attorneys Fees)

125     This Count XI of the Complaint seeks a monetary judgment for attorney's fees incurred by ISN in this case pursuant to the Equal Access to Justice Act.

126     ISN repeats and realleges paragraphs 1-124 of the Complaint as if fully set forth herein.

127.     Pursuant to the Equal Access to Justice Act("EAJA"), in the event ISN is the "prevailing party" in this case as determined by the Court, it is entitled to file a petition for attorney's fees and expenses (in-house as well as outside counsel) incurred by ISN during this proceeding unless the position of the defendant is found to be "substantially justified."

128.     Alternatively, even if a determination by the Court is made that the position of the defendant was "substantially justified," this case establishes a substantial benefit for other contractors similarly situated like ISN, who have not had contracts closed out in a timely manner. As a result, ISN is entitled to file a petition for attorney's fees and demonstrate to the Court its entitlement to the attorney's fees and expenses claimed in this case.

129.     ISN seeks judgment against the defendant for its attorney's fees and costs incurred in this case in an amount to be determined by the Court by appropriate petition at the conclusion of this case.

WHEREFORE, the premises considered, plaintiff, Information Systems & Networks Corporation, demands judgment against the defendant, United States, as follows:

A. On Count I for a declaratory judgment that the Final Indirect Rates as calculated by ISN have been correctly calculated and properly include all allowable costs and apportionments;

B. On Count II for judgment on invoiced amounts in an amount no less than $7,000,000 plus appropriate Court awarded interest;

C. On Count III for judgment for unlawful offsets against ISN invoices in an amount no less than $475,000 plus appropriate Court awarded interest;

D. On Count IV for judgment for Unabsorbed Overhead in an amount no less than $44,000,000 plus appropriate Court awarded interest;

E. On Count V for judgment for loss of profit on loss of a follow-on contract in an amount no less than $1,300,000 plus appropriate Court awarded interest

F. On Count VI for judgment on loss of profit damages due to the withholding of final indirect rates sustained by ISN in an amount no less than $30,000,000 plus appropriate Court awarded interest

G. On Count VII for judgment on loss of profit damages sustained by ISN due to the wrongful conduct and acts of the defendant in an amount no less than $30,000,000 plus appropriate Court awarded interest

H. On Count VIII for judgment for loss of profit damages sustained by ISN due to the bad faith wrongful conduct and acts of the defendant in an amount no less than $30,000,000.  Plus appropriate Court awarded interest.

I. On Count IX for judgment for financing costs due on borrowings in an amount no

less than $10,000,000;

J.  On Count X for judgment for Prompt Payment Act,  Contract Disputes Act, and Interest Penalties due ISN on its judgments and awards;

K.  On Count XI for ISN's attorneys fees and expenses in an amount to be determined by the Court;

L.  For such other and further relief as this Court may deem proper.

Dated: December, 13 2013

SINGER & ASSOCIATES,PC

Norman H. Singer, Esq
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
(301) 222-0702
Fax (301) 469-0403

# COMPLAINT EXHIBITS



# SINGER & ASSOCIATES

*A Professional Corporation*

ATTORNEY AT LAW
10411 MOTOR CITY DRIVE
SUITE 725
BETHESDA, MD 20817

TELEPHONE: (301) 222-0720
FACSIMILE: (301) 469-0403
EMAIL: nsinger@isncorp.com

VIRGINIA OFFICE
810A BULLS NECK ROAD
SUITE ONE
McLEAN, VA 22102

Via Federal Express

January 31, 2013

Mr. John Svensson
Administrative Contracting Officer
Defense Contract Management Agency
217 East Redwood Street, Suite 1800
Baltimore, MD 21202-5299

Re:  **Contract Disputes Act Claim**
Our Client:  **Information Systems & Networks Corporation**
**Claim Under the Following Contracts:**
 Contract No. F19628-82-C-0108
 Contract No. NSA5-27486
 Contract No. MDA908-83-G-1504
 Contract No. MDA903-84-C-0222
 Contract No. DAAK20-84-C-0149
 Contract No. N68335-84-D-0903
 Contract No. DASG60-85-C-0035
 Contract No. F19628-85-C-0043
 Contract No. 50SBNB-85-C-3523 -
 Contract No. DTFA01-85-Y-01018 -
 Contract No. N00024-85-C-6528
 Contract No. DLAH00-85-C-0010

1

# SINGER & ASSOCIATES

*A Professional Corporation*                                    2.

Contract No. NASW-4164
Contract No. MDA903-87-C-0004
Contract No. MDA903-88-C-0702
Contract No. DAAK70-83-C-0145
Contract No. N66604-87-D-0098

Dear Mr. Svennson:

As Counsel to Information Systems & Networks Corporation("ISN"), and pursuant to the Federal Acquisition Regulations("FAR") Sec. 52.233-1 and the Contract Disputes Act of 1978, 41 U.S.C. Sec. 7101 et. seq. as amended("the CDA"), ISN submits the following certified claim for various contract entitlements. These entitlements are set forth on completion invoices or vouchers previously submitted to relevant contract agencies and the respective payors set forth in each of the 17 contracts as well as other contract claims.

The claims, as hereinafter further described, consist of (a) adjustments for certain allowable costs included in the calculation of final indirect rates by ISN, including the final indirect rates resulting from the Settlement Agreement between ISN and the Government dated November 10, 2010("the Settlement Agreement", as well as inter alia, executive compensation and reversal of corporate allocations, (b.) direct labor and other indirect costs due on each of the contracts within contract ceilings billed to the Government in the last 90 days and unpaid, (c.) direct labor and other indirect costs billed on each of the contracts above contract ceilings billed on each of the contracts in the last 90 days and unpaid,(d.) unpaid invoices previously billed to the Government before 2000 and unpaid,(e.) offsets billed to the Government in the last 90 days in excess of $600,000, (f..) unabsorbed overhead associated with the Government's failure to close-out each of the 17 contracts in a timely manner, creating a de facto suspension of the 17 open contracts by failing to issue final indirect rates and take all other reasonable measures to close-out ISN's open contracts, (g..) loss of profit damages due on the loss of at least one follow-on contract due to the actions of the Government in excess of $1 million, (h..) loss of profit damages resulting from the Government's failure to issue final indirect rates in a timely manner in excess of $16 million (i..) for other retentions, withholds, and other payments due on each of the 17 contracts as set forth on each of the 17 invoices, (j..) for financing costs due ISN, (k..) for Prompt Payment Act interest("PPA Interest"), the CDA interest, interest penalties under the CDA, and (l..) for reasonable attorneys fees incurred by ISN under the Equal Access to Justice Act.

A. The 17 Invoices

On November 1, 2012, ISN mailed to each of the contract agencies connected with each of the 17 contracts, final close-out invoices. Each invoice was prepared on Standard Form 1034 and was accompanied by Standard Form 1035 consisting of ISN's Cumulative Claim

# SINGER & ASSOCIATES

*A Professional Corporation*                                3.

Reconciliation Statement for each invoice. Also attached were worksheets setting forth calculations of based on delay period, daily delay rate, adjusted cost based on daily rate, offsets, financing of retentions/allowable amounts that remain unpaid partially or not paid entirely, as well as PPA Interest and CDA Interest. Finally, each invoice also included any old invoice which ISN had previously billed but which was either unpaid partially or not paid entirely. All 17 invoices were mailed to the designated payor as set forth in each of the 17 contracts. To the extent that the invoices were also required to be submitted to a Disbursing Office, a second set of invoices were submitted there. Of the 17 invoices, only four(4) provided received return receipts: Contracts Nos. N68335-84-D-0903, 50SBNB-85-C-3523, N00024-85-C-6528, and N66604-87-D-0098.

Copies of the 17 contract invoices were also Federal Expressed to the Administrative Contracting Officer("the ACO") on November 1, 2012 and were received the morning of November 2, 2012.

The 17 invoices were prepared pursuant to applicable FAR provisions, contract terms and the Contract Closeout Guidelines of the Defense Contract Management Agency dated September, 2011. The invoices were submitted pursuant to the Settlement Agreement which arose from Information Systems & Networks Corporation v. United States, Case No. 06-99C in the United States Court of Federal Claims("the Rate Case"). Paragraph 11 of the Settlement Agreement provides that ISN released the Government from all claims for monetary and declaratory relief arising out of, set forth, related to, or otherwise involved in the Rate Case, "with the exception of claims for payment resulting from the Government's calculation of final indirect rates that ISN might present to the agencies with which it contracted."

Each of the 17 invoices was required to be processed and paid within at least 45 days of receipt. No invoice has been paid; nor has ISN been advised that such payment will be issued to satisfy any invoice. ISN is therefore treating each of the 17 invoices as declined and unpaid.

B. Relevant Background for the CDA Claim

On December 14, 2004, ISN filed a Contract Disputes Act Claim addressing 19 open contracts ("the December CDA Claim") and asserted various contract damage claims associated with each of the 19 contracts. In addition, ISN demanded the establishment of final indirect billing rates so it could prepare and issue close-out invoices on all of its open contracts (including the 19 which were the subject of the December CDA Claim. On February 5, 2005, the ACO issued his Final Decision on the December CDA Claim setting forth the issues that were required to be resolved to establish the final indirect rates and the ACO's position on such issues. In a separate Final Decision May 11, 2005, the ACO denied all contract based claims.

The two Final Decisions of the ACO on the December CDA Claim resulted in ISN filing two separate cases in the United States Court of Federal Claims. The first case was filed on

# SINGER & ASSOCIATES

*A Professional Corporation*

4.

February 8, 2006 and claimed relief regarding the failure of the government to issue final indirect rates and addressed five disputed final indirect rate issues which were required to be resolved for the commencement of the FAR mandated final indirect rate determination process. During the pendency of this case, ISN filed a motion to amend its complaint to assert a money judgment for the disallowed indirect rate equivalents rather then utilizing the billing process to obtain the reimbursement of costs. The motion was granted. At trial, the case was settled wherein the Government stipulated to ISN's position on the five indirect rate issues. This resulted in the Settlement Agreement which attempted to quantify the amounts that should be included in the cost pools for determining the final indirect rates. The Settlement Agreement was silent on the process for then determining the final indirect rates and the protocol that would be used if the rates calculated by the Government and ISN did not agree to such calculation.

The second case resulting from the December CDA Claim was filed on May 11, 2006 and sought relief on 19 CPFF open contracts. Subsequently, six of the contracts were found to have been improperly included, but an additional four were added bringing the total to 17 contracts. This case, Information Systems & Networks Corporation v. United States, Case No. 06-387C, was then stayed by the Court pending resolution of the Rate Case because final indirect rates were a necessary component in the formulation of damages in Case No. 06-387C. Ultimately, after the resolution of the Rate Case via the Settlement Agreement, the stay was lifted.

Final indirect rates were prepared by the ACO with assistance from a former DCAA Auditor. These rates were provided to ISN in February, 2011, but ISN did not agree with them. Various problems were discovered with them. Without a built-in means of resolving such a dispute, ISN then utilized its own resources in preparing final indirect rates which cured the errors it had found with the Government's final rates as well as other allowable costs which should have been included in the cost pools.

Prior to the final pretrial conference in Case No. 06-387C for the trial of the case scheduled on November 5, 2012, the Government filed four separate motions raising jurisdictional issues with certain of the claims being asserted by ISN including certain components of ISN's final indirect rates. In an effort to avoid an unnecessary trial where complete relief may not have been available to ISN, it was agreed that Case No. 06-387C would be voluntary dismissed allowing ISN to properly raise all its contract claims including its final indirect rates in a manner which would not be subject to jurisdictional dispute.

This CDA Claim asserts amounts owed by the Government to ISN under the contracts listed at the head of this letter as well as set forth on the 17 contracts. The amounts due under these contracts could only have been calculated after resolution of the Rate Case on November

# SINGER & ASSOCIATES

*A Professional Corporation*                                    5.

10, 2010 and could not have been known by ISN until after the Government submitted its version of the final indirect rates in February, 2011. Certain of the contract claims asserted on the 17 invoices were related to the claims asserted in Case No.06-387C, but such claims have been voluntarily dismissed without prejudice and are not pending.

The claims set forth in the CDA Claim are for payments and damages due under each of the 17 contracts as well as due ISN proximately related to the final indirect rate issues. Because each of the contracts was awarded prior to October, 1995, the six-year statute of limitations established by the Federal Acquisition Streamlining Act("FASA") does not apply to these claims. Even if FASA did apply, the amounts claimed rely on the calculation of final indirect rates and because such calculation could not have been completed until the earliest of November 10, 2010, this claim is properly filed within the six year statute of limitations. Further, because ISN reasonably relied on the government to utilize either the FAR mandated Contracting Officer close-out or the Auditor close-out, the invoice claims could not be asserted at any earlier time and such conduct by the Government tolled the running of any statute of limitations if such statute of limitations is applicable.

C. Contract Claims

ISN's claims can be summarized as follows:

(a.) Use of ISN's Final Indirect Rates.
In addition to the additional allowable costs stipulated and agreed to in the Settlement Agreement, ISN has added to the relevant cost pools additional claimed costs adjusted per the FAR for "Other Compensation." These costs consist of at least $44,000 for 1982, at least $81,000 for 1983, at least $139,000 for 1984, at least $174,000 for 1985, at least $385,000 for 1986, at least $275,000 for 1987, at least $136,000 for 1988, at least $234,000 for 1989, at least $3500 for 1990, at least $205,000 for 1991, at least $930,000 for 1992, at least $658,000 for 1993, at least $545,000 for 1994 and at least $339,000 for 1995. In addition, ISN utilized in its calculations a reversal of the corporate allocations originally set forth in the ACO's Final Decision of February 6, 2006 for years 1988-1995. These changes causes adjustments to the G&A Rate and ISN's Final Indirect Rates. ISN's Final Indirect Rates are accurate and properly reflect the Final Rates that should be utilized on ISN's final completion vouchers (previously submitted) and in all other calculation of entitlements where applicable.

(b.) and (c.) Completion Invoices. The 17 invoices set forth amounts due under each of the 17 contracts. A copy of each invoice has been previously submitted to the relevant Government agency and payor office as well as to the ACO. The invoices contain amounts due for direct labor, other direct

# SINGER & ASSOCIATES

*A Professional Corporation*                    6.

costs, fringe and other adjustments required by the use of ISN's final indirect
rates. The components of these final indirect rates were the subject of
discovery by the Government in Case No. 06-387C and the Government has
direct knowledge of such components. In addition to the two major
components described in (a.) above, there are also contract close-out
components. In addition, ISN has set forth on each of the 17 invoices,
calculations of PPA Interest and CDA Interest and interest penalties. Total
invoiced amounts consisting of reimbursable costs exceeds ~~$3,000,000~~. Total
PPA Interest and CDA Interest and Interest Penalties exceeds $4,000,000.

(d.) <u>Old Invoices.</u>  Certain of the invoices submitted on each of the 17 contracts
also include invoices submitted by ISN to the Government prior to year 2000
which have not been paid by the Government or in some instances only
partially paid. These invoices total in excess of ~~$500,000~~ excluding
appropriate PPA and CDA interest.  $145, 903

(e.) <u>Offsets.</u>  The Government, periodically and without justification, offset
amounts allegedly due the Government on certain of the 17 contracts
totaling at least ~~$600,000~~. These amounts have been previously billed the
Government on the previously submitted 17 invoices and remain unpaid.

(f.) <u>Unabsorbed Overhead.</u>  DCAA issued its final revised Audit Report for 1992-
1995 on July 3, 2001. Thus, with the exception of state tax cost, DCAA was in
a position to issue or determine final indirect rates pursuant to FAR 42,705.
The ACO did not comply with the requirements of FAR 42.705-1. It was not
until ISN filed its CDA Claim on December 14, 2004 that the issue of certain
disputed costs were formally raised. ISN claims that had the ACO acted
reasonably for each year in which disputed costs arose from the respective
Audit Reports, ISN would then have been in a position to resolve such
disputed cost items timely which would then have provided the basis for
ISN to submit its completion vouchers. This delay by the Government caused
ISN to maintain its Home Office so that closeout invoices could ultimately be
prepared and submitted. In effect, the failure of the Government to follow
the FAR constituted a suspension of all of ISN's pending contracts and in
effect prevented ISN from closing-out or completing the performance of
those contracts. ISN claims compensation for the delay on what is termed
unabsorbed home office overhead. The Court has stated that home office
overhead is among a contractor's indirect costs, "costs that are expended for
the benefit of the whole business, and by their nature cannot be attributed or
charged to any particular contract." <u>Nicon v. United States,</u> 331 F.3d 878(Fed.
Cir. 2003). A contractor recovers its indirect costs, such as home office over-
head, by allocating a share of these costs to each of its contracts. The share
allocated to each contract is proportional to the amount of direct costs
incurred under the contract. When the Government suspends performance
under a contract, however, the contractor ceases to incur direct costs under

# SINGER & ASSOCIATES

*A Professional Corporation*                    7.

that contract. In that circumstance, the contractor cannot recover the proportional share originally allocated to the suspended contract. That share of the contractor's home office overhead is said to be "unabsorbed" during the period of suspension. The Federal Circuit has established the so-called EICHLEAY formula as the exclusive method for calculating a contractor's unabsorbed overhead during the period of Government-caused delay. ISN has used the EICHLEAY formula in calculating the unabsorbed overhead under each of the 17 contracts. The results of those calculations are as follows:

> F19628-82-C-0108 at least $3,200,000.
> NSA5-27486 at least $1,150,000.
> MDA908-83-G-1504 at least $1,700,000.
> MDA903-84-C-0222 at least $9,000,000.
> DAAK20-84-C-0149 at least $670,000.
> N68335-84-D-0903 at least $265,000.
> DASG60-85-C-0035 at least $870,000.
> F19628-85-C-0043 at least $596,000.
> 50SBNB-85-C-3523 at least $1,450,000.
> DTFA01-85-Y-01018 at least $638,000.
> N00024-85-C-6528 at least $1,500,000.
> DLAH00-85-C-0010 at least $2,160,000.
> NASW-4164 at least $2,135,000.
> MDA903-87-C-0004 at least $1,700,000
> MDA903-88-C-0702 at least $5,740,000.
> DAAK70-83-C-0145 at least $1,758,000
> N66604-87-D-0098 at least $3,100,000.

The Eichleay delay period ends on November 10, 2010, the date of the Settlement Agreement.

(g.) <u>Loss of Profit on Follow-On Contracts.</u> ISN claims that it did not receive follow-on contracts to F19628-82-C-0108. The follow-on consisted of revenue of at least $13 million with a loss of profit of at least $1.3 million. There may be other follow-ons that were lost to certain other contracts included in the 17 contracts, but ISN does not have sufficient documentation to make such a claim at this time.To the extent those supporting documents are found In any subsequent discovery between the parties, ISN will add such claims to this CDA Claim and request incorporation by reference. The follow-on being claimed was not awarded by the Government because of claimed accounting problems associated with ISN and the failure of ISN to have indirect rates that could be used for the follow-on contracts.

# SINGER & ASSOCIATES

*A Professional Corporation*

8.

(h.) Other Retentions, Withholds, And Other Payments Due. The 17 invoices
include all of these items. To the extent that any of these items is incomplete
or not fully stated, such amounts will be appropriately amended by ISN.

(h.) <u>Loss of Profit Damages</u>. As direct result of the Government's failure to cooperate in
settling final indirect rates and other violations of the FAR in this regard, the lack of
settled rates impaired ISN's ability to obtain Government contracts. In effect,       the
Government's intentional withholding of final indirect rates constituted a de facto
debarment and was without due process. ISN has calculated its loss of profit directly
caused by this Government conduct based on
methodologies that are recognized and appropriate in this instance. ISN
compared its financial performance during the period ISN was not impacted
by the lack of final indirect rates with its financial performance during the
period it was impacted. In addition, ISN compared its growth rate with other
companies similarly situated so as to confirm the percentages utilized and to
further confirm the growth rate developed in the regression computation. ISN's
calculations establish a loss of profit of at least $30 million.

(i.) <u>Other Retentions, Withholds, And Other Payments Due.</u> The 17 invoices
include all of these items. To the extent that any of these items is incomplete
or not fully stated, such amounts will be appropriately amended by ISN.

(j.)<u>Financing Costs Due on Borrowings.</u> ISN had to borrow during the years 1985-
2011 from third parties to finance contract performance and equitable
adjustments. Specifically, the Government agreed to provide financing to ISN
for contract performance by providing monthly progress payments. However,
ISN will demonstrate that DCAA improperly and arbitrarily reduced such
payments. DCAA also suppressed Provisional Billing Rates and otherwise
manipulated such rates as to disadvantage ISN. The Government also
prevented ISN from claiming equitable adjustments on contracts thereby
impacting cash flow which required IS to borrow money from a third party to
pay for contract performance of ongoing contracts. ISN claims that interest on
such borrowings is an allowable cost. Total borrowings allocable to the 17
contracts described herein were at least $3,100,000. Total interest claimed on
the borrowings isat least $10,000,000.

(k.)<u>PPA Interest and CDA Interest and Interest Penalties.</u> The failure of the
Government to pay ISN's old Invoices as submitted with the invoices for the
17 contracts obligates the Government to pay interest penalties pursuant to
31U.S.C. Sec. 3907 for a period of one year after the invoice was due to be
paid by the  Government and an additional penalty thereafter until the filing of
the CDA Claim. ISN is also entitled to CDA Interest on the amounts set forth in
this CDA Claim.

(l.)<u>Attorneys Fees.</u> ISN also claims its reasonable attorneys fees and expenses
Incurred in the filing of this CDA Claim and any attendant litigation resulting
therefrom, if the Court finds that either the Government's position was "not
substantially justified" or alternatively, that the result of the case established
a substantial benefit for other contractors in the same position as ISN who also

# SINGER & ASSOCIATES

*A Professional Corporation*                    9.

did not have final indirect rates decided or established by the Government and the contractor under the FAR mandated protocols. Any such amounts would o only be established by the Court after the litigation with the Government was concluded.

### D. Conclusion

ISN hereby requests that as the cognizant ACO, you issue a Final Decision in writing within a period of 60 days from the date of this CDA Claim and furnish a copy of such Final Decision to ISN. The Final Decision shall state the reasons for the Final Decision reached by you and shall inform ISN of its rights as provided under the CDA and any applicable regulation under the FAR. Specific findings of fact are not required, but if made, shall not be binding in any subsequent proceeding.

### E. Claim Certification

See Attached.

Very sincerely yours,

Norman H. Singer, Esq.

## CLAIM CERTIFICATION

I, Roma P. Malkani, President and CEO of Information Systems & Networks Corporation("ISN"), hereby provides the following Certification as required by 41 U.S.C. Sec. 7103(b)(1)(1994):

1. I am the authorized representative of ISN; I am familiar with the financial books and records of ISN and with each of the 17 contracts which are the subjects of the CDA Claim to which this Certification is being provided.

2. I hereby certify that ISN's contract claims as set forth in the attached CDA Claim are made in good faith, that ISN's supporting data including its financial books and records are accurate and complete to the best of my knowledge and belief to support the various claims that are asserted; that the amounts set forth in the CDA Claim as being owed by the Government and/or for which the Government is liable are accurately presented and reflect ISN's entitlement to the amounts set forth; that the Government is liable to ISN for the amounts set forth in the CDA Claim.

3. I hereby certify that none of the amounts claimed consist of claims previously asserted by ISN against the Government which have not been otherwise resolved; that none of the claims were covered or could have been covered by any payment made by the Government to ISN.

4. The facts as set forth in the attached CDA Claim are true and correct to the best of my knowledge or are based on the investigation of ISN and the results of that investigation as made known to me.

5. I am duly authorized to certify claims on behalf of ISN.

Roma P. Malkani, President & CEO
Under the Penalty of Perjury

16



**DEFENSE CONTRACT MANAGEMENT AGENCY**
DCMA OPERATIONS DIRECTORATE
EASTERN REGIONAL COMMAND
DCMA BALTIMORE
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

IN REPLY
REFER TO:  DCMAE-ETABB                                    May 20, 2013

## VIA CERTIFIED MAIL, E-MAIL, AND FAX

Norman H. Singer, Esq.
Attorney at Law
10411 Motor City Drive
Suite 725
Bethesda, MD 20817

Dear Mr. Singer:

As the current Administrative Contracting Officer ("ACO") with cognizance over Information Systems & Networks Corporation ("ISN") on behalf of the Defense Contract Management Agency ("DCMA"), this is my contracting officer's final decision in response to your letter of January 31, 2013 on behalf of ISN to Mr. John Svensson of this organization (hereafter the "ISN claim"). As you requested in your April 29, 2013 letter, I have deferred issuing this final decision so that I could have the time to review the voluminous materials you provided on April 30, 2013.

As the previous ACOs informed you, DCMA does not have contract administration authority over all of the seventeen contracts listed in the ISN claim. On April 2, 2013, Ms. Lambert has informed you that DCMA has contract administration authority over the following eleven contracts (the "Eleven Contracts"):

MDA903-87-C-0004
MDA903-88-C-0702
MDA903-84-C-0222
F19628-82-C-0108
F19628-85-C-0043
N66604-87-D-0098
N00024-85-C-6258[1]
DAAK70-83-C-0145
DAAK20-84-C-0149
DASG60-85-C-0035
DLAH00-85-C-0010

---

[1]     Upon review of the applicable records, it appears there was a typographical error on one of the contract numbers you have listed in the ISN claim—N00024-85-C-6528. Our records do not show that a contract with number N00024-85-C-6528 exists. Ms. Lambert referenced that number in her April 2, 2013 letter because she took it from the ISN claim. Nevertheless, our records show that contract number N00024-85-C-6258 was awarded to ISN. I do have cognizance over contract number N00024-85-C-6258, but not N00024-85-C-6528.

Again, as Ms. Lambert advised you in her April 2, 2013 letter, any claims related to the other six contracts listed in your letter must be submitted to the contracting officer(s) with official responsibility for them.

Prior Claims

With regard to the Eleven Contracts, the ISN claim professed to assert twelve particular claims under the Contract Disputes Act ("CDA"). These were summarized on pages 5–9 of the ISN claim as "(a.)" through "(l.)." I have determined that ten of the twelve claims set forth in the ISN claim were previously asserted in ISN's claim dated December 14, 2004 (the "2004 claim"), and have been decided by contracting officer's final decisions issued by Mr. Svensson on February 9, 2005 and May 12, 2005. A copy of ISN's 2004 claim is enclosed. I am also providing to you copies of the two contracting officer's final decisions on the Eleven Contracts that cover all of the following current claims:

(a.) concerning ISN's final annual indirect cost rates for ISN's fiscal years 1985 through 1995;

(b.) concerning direct labor and other indirect costs allegedly due on each of the Eleven Contracts within contract ceilings;

(c.) concerning direct labor and other indirect costs allegedly due on each of the Eleven Contracts above contract ceilings;

(d.) concerning certain invoices submitted on the Eleven Contracts prior to year 2000 that allegedly have not been paid or, in some instances, only partially paid;

(e.) concerning "offset amounts" allegedly billed to the Government on the previously submitted invoices that remain unpaid;

(f.) concerning compensation for the unabsorbed home office overhead allegedly caused by the delay in resolving disputed indirect costs;

(g.) concerning the alleged loss of profit on follow-on contracts to contract number F19628-82-C-0108;

(i) concerning other retentions, withholds, and other payments allegedly due on the Eleven Contracts;

(k.) concerning PPA interest, CDA interest, and interest penalties allegedly due on the Eleven Contracts; and

(l.) attorney's fees and expenses allegedly incurred in the filing of ISN's CDA claim and any attendant litigation regarding the Eleven Contracts.

Since these claims have already been decided in Mr. Svensson's prior final decisions, it would be inappropriate for me to issue any final decision concerning them, and I do not do so.

Contracting Officer's Final Decision

With regard to that part of claim (a.) that asserts ISN should be allowed to add "to the relevant cost pools additional claimed costs . . . for 'Other Compensation'" for its fiscal years 1982 through 1984, the situation is different from the claims set forth above. ISN's fiscal years 1982 through 1984 were not covered in Mr. Svensson's final decision on indirect cost rates, dated February 9, 2005.

With regard to current claims (h.) and (j.), the situation is also different. I find that the following claims were not included in ISN's 2004 claim: (h.) seeking loss-of-profit damages on unawarded contracts[2] that were caused by a "de facto debarment," and (j.) seeking interest on borrowings from 1985 through 2011.

Set forth below, are my contracting officer's final decisions on the three current claims: addition indirect costs for fiscal years 1982–1984 in claim (a.), claim (h.), and claim (j.).

A.      Additional indirect costs for fiscal years 1982–1984

In its current claim, ISN seeks to add "at least $44,000 for 1982, at least $81,000 for 1983, [and] at least $139,000 for 1984" to the relevant cost pools for its final indirect rates for those years. I find that ISN is not entitled to add these amounts to the relevant cost pools for any of those years.

For its fiscal year ending September 30, 1982, ISN signed a final indirect cost rate agreement with the Government on January 5, 1984. Therefore, its indirect costs for that fiscal year are final, and its claim related to fiscal year 1982 is denied.

For its fiscal years 1983 and 1984, ISN has not submitted a revised final indirect cost rate proposal that includes the additional amounts for "Other Compensation" it seeks to include in its indirect rates. Under the applicable regulations, costs must be submitted to the contracting officer and auditor in an adequate proposal to be considered for inclusion in the final indirect cost rates. Since ISN has not complied with this requirement, I cannot consider these costs for inclusion in the rates. Therefore, ISN's claim for inclusion of the "Other Compensation" costs in the indirect rates for its fiscal years 1983 and 1984 is denied.

B. Damages on unawarded contracts due to a "de facto debarment"

You assert that, as a result of the lack of settled final indirect rates, ISN was unable to obtain various unspecified contracts. As you know, DCMA did not award or fail to award any such contracts. Any claim arising from contracts not awarded is not a claim arising under or relating to any contract administered by this agency. Further, your claim is for speculative lost profits on such contracts. Since such lost profits obviously do not arise under any contract administered by this agency, I have no authority to even consider granting any remedy. (This is not to suggest that there is any other contracting officer who could do so.) Therefore I reject this

---

[2]      Except for the claim for follow-on contracts to F19628-82-C-0108, which was a part of ISN's December 2004 claim.

claim as not a claim under my cognizance pursuant to the Contract Disputes Act. To the extent that you deem it a valid claim related to the Eleven Contracts, consider it denied.

C. Interest on borrowings from 1985 through 2011

On page 8, paragraph (j) of your letter, ISN claimed interest on borrowings from 1985–2011. Interest on borrowings is expressly unallowable under FAR 31.205-22, Interest and other financial costs, as well as DAR 15-205.17. Therefore, insofar as the Eleven Contracts are concerned, I deny ISN's claim for interest on borrowings costs in its entirety.

Appeal Rights

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's —

(1) Small claim procedure for claims of $50,000 or less or, in the case of a small business concern (as defined in the Small Business Act and regulations under that Act), $150,000 or less; or

(2) Accelerated procedure for claims of $100,000 or less.

Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 7102(d), regarding Maritime Contracts) within 12 months of the date you receive this decision.

If you have any questions concerning this letter, please contact me by telephone at (410) 962-9928 or e-mail at Christine.Turner@dcma.mil.

Sincerely,

CHRISTINE TURNER
Administrative Contracting Officer

Attachments:
As stated

cc:
DCMAE-ETG/Eugene Ham

14

National Aeronautics and Space Administration

**Goddard Space Flight Center**
Greenbelt, MD 20771

June 4, 2013

Reply to Attn of:   140

<u>CERTIFIED MAIL</u>

Norman H. Singer, Esq.
10411 Motor City Drive
Suite 725
Bethesda, MD  20817

Subject:  Claim of Information Systems & Networks Corporation

Dear Mr. Singer:

      Thank you for your letter dated May 31, 2013, concerning the subject claim.  This was in response to NASA's request dated May 23, 2013, in response to your letter dated May 21, 2013.  NASA Goddard Space Flight Center has examined all the information provided in both your letters.  The letters do not provide the necessary information to support payment of the claim, in particular for those aspects mentioned in NASA's letter dated May 23, 2013.  Therefore your claim dated April 5, 2013, is hereby denied.

Sincerely,

James M. Debelius
Contracting Officer

**Exhibit D - Claimed Indirect Rates For Years 1982-2000**

EXHIBIT D

Comparison of Rates

| No. | Source of Documents / Years | ASO Approved from 1982-1985 | | | | Settlement Agreement | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
| 1 | Company's Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Fringe (DCAA Proposed - 2/2011 & 12/2011) | 29.10% | 29.10% | 29.10% | 33.50% | 33.50% | 33.50% | 33.54% | 30.55% | 30.31% | 27.93% | 29.01% | 31.47% | 27.82% | 28.18% | 26.13% | |
| | Company's Claimed Actual Rates (ICS) | 29.10% | 29.10% | 33.50% | 33.50% | 33.50% | 34.00% | 33.13% | 30.31% | 27.67% | 30.29% | 29.17% | 27.82% | 28.18% | 26.13% | | 25.17% |
| 2 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | G&A (DCAA Proposed - 2/2011 & 12/2011) | 20.10% | 19.90% | 20.00% | 17.52% | 18.42% | 16.83% | 18.79% | 8.81% | 14.32% | 13.05% | 13.88% | 19.27% | 13.24% | 13.10% | | |
| | Company's Claimed Actual Rates (ICS) | 20.10% | 19.90% | 20.00% | 20.47% | 20.00% | 11.75% | 9.36% | 8.81% | 9.49% | | | | | | 17.28% | 28.96% |
| 3 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Wash A (DCAA Proposed - 2/2011 & 12/2011) | 45.80% | 45.90% | 46.00% | 47.21% | 46.29% | 45.90% | 60.30% | 88.58% | 63.74% | 59.18% | 22.60% | | | | | |
| | Company's Claimed Actual Rates (ICS) | 45.80% | 46.64% | 46.00% | 47.21% | 46.55% | 61.71% | 61.71% | 84.88% | 63.37% | 55.14% | 22.60% | 36.82% | 41.32% | | 79.26% | 79.85% |
| 4 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Wash B (DCAA Proposed - 2/2011 & 12/2011) | 35.90% | 35.90% | 36.00% | 35.30% | 35.71% | 38.80% | 39.53% | 60.33% | 41.36% | 36.95% | 18.45% | 24.81% | | | | |
| | Company's Claimed Actual Rates (ICS) | 36.00% | 35.93% | 36.00% | 35.30% | 36.01% | 36.60% | 41.70% | 60.64% | 49.53% | 50.56% | 37.75% | 49.57% | 28.25% | 34.70% | 14.38% | |
| 5 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | NASA TJM/SWxah D (DCAA Proposed - 2/2011 & 12/2011) | | | | | 20.00% | 20.00% | 41.70% | 59.42% | 49.53% | 50.56% | | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | 36.01% | 35.60% | 41.70% | 59.62% | 49.53% | 50.56% | | | | | | |
| 6 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Alabama (DCAA Proposed - 2/2011 & 12/2011) | | | | | | | 20.23% | | | | | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | | | 20.23% | 51.62% | | | | | | | | |
| 7 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Boston A (DCAA Proposed - 2/2011 & 12/2011) | | | | 47.50% | 46.01% | 50.30% | | | | | | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | 47.50% | 46.01% | 50.30% | 112.00% | 72.48% | 59.97% | 53.12% | N/A | | | | | |
| 8 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Boston B (DCAA Proposed - 2/2011 & 12/2011) | | | | | | 50.30% | | | | | | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | | 52.30% | 111.81% | 70.09% | 64.27% | 52.65% | 36.42% | | | | | |
| 9 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Newport A (DCAA Proposed - 2/2011 & 12/2011) | | | 36.18% | | | | | | | | | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | 36.18% | | | 112.00% | 112.00% | 102.27% | 72.48% | 59.97% | 53.12% | N/A | | | | |
| 10 | Incurred Cost Submission* | | | | | | | | | | | | | | | | |
| | Newport B (DCAA Proposed - 2/2011 & 12/2011) | | | | 39.60% | | | | | | | | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | | 53.55% | 53.10% | 47.63% | 53.67% | 51.00% | 32.41% | | | | 45.29% | |

Norm - COMPLAINT - Exhibit D - Final Rate Sheet 1982-2003 attached to Complaint 12-5-2013 (No Color) .xls

| No. | Years | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Incurred Cost Submissions* | | | | | | | | | | | | | | | | |
| | San Antonio A (DCAA Proposes - 2/2011 & 12/2011) | | | | 47.55% | 41.16% | 45.80% | | 64.52% | | | 25.88% | | | | | |
| 11 | Company's Claimed Actual Rates (ICS) | | | | 47.55% | 41.62% | 45.80% | 59.77% | 64.63% | 64.45% | 54.72% | 65.58% | 40.59% | 35.08% | 36.60% | 62.99% | 35.19% |
| | Incurred Cost Submissions* | | | | | | | | | | | | | | | | |
| | San Antonio B (DCAA Proposes - 2/2011 & 12/2011) | | | | 38.42% | | | | | | | | | | | | |
| 12 | Company's Claimed Actual Rates (ICS) | | | | 36.40% | 33.44% | 35.80% | 49.45% | 52.06% | 52.18% | 48.79% | 55.01% | 36.78% | 28.92% | 28.86% | 38.22% | |
| | Dayton A | | | | | | | | | | | | | | | | |
| 13 | Company's Claimed Actual Rates (ICS) | | | | 38.90% | 40.82% | 36.80% | 60.70% | | 84.05% | 217.20% | 103.11% | | | 52.83% | | |
| | Dayton B | | | | | | | | | | | | | | | | |
| 14 | Company's Claimed Actual Rates (ICS) | | | | 30.90% | 30.41% | 27.00% | 42.44% | | 49.44% | | | | | | | |
| | Atlanta | | | | | | | | | | | | | | | | |
| 15 | Company's Claimed Actual Rates (ICS) | | | 81.44% | 51.01% | | | | | | | | | | | | |
| | New Jersey A | | | | | | | | | | | | | | | | |
| 16 | Company's Claimed Actual Rates (ICS) | | | | 35.87% | 34.60% | | | | | | | | | | | |
| | New Jersey B | | | | | | | | | | | | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | 26.97% | 27.10% | | | | | | | | | | | |
| | N. Carolina A | | | | | | | | | | | | | | | | |
| 17 | Company's Claimed Actual Rates (ICS) | | | | 45.50% | 46.00% | 60.72% | 59.81% | 58.30% | 62.33% | 52.02% | 59.97% | 55.20% | 58.03% | 26.17% | | 53.65% |
| | N. Carolina B | | | | | | | | | 37.39% | | | 44.40% | | | | |
| 18 | Company's Claimed Actual Rates (ICS) | | | | | | | | | 59.06% | 48.11% | 43.41% | 47.20% | | | | |
| | Indiana | | | | | | | | | | | | | | | | |
| 19 | Company's Claimed Actual Rates (ICS) | | | | | 19.60% | 36.96% | 49.47% | 39.48% | | | | | | | | |
| | Florida | | | | | | | | | | | | | | | | |
| 20 | Company's Claimed Actual Rates (ICS) | | | | | | | 48.40% | 34.06% | | 31.11% | 28.33% | | | | | |
| | S. Carolina - Charleston | | | | | | | | | | | | | | | | |
| 21 | Company's Claimed Actual Rates (ICS) | | | | | | | | 59.88% | 44.53% | 32.65% | 43.41% | | | | | |

## Claimed Indirect Rates For Years 1982-2000

**Comparison of Rates**

| No. | Source of Documents / Years | 1996 | 1997 | 1998 | 1999 | 2000 |
|---|---|---|---|---|---|---|
| | | | | **Settlement Agreement** | | |
| 1 | Company's Incurred Cost Submission* | | | | | |
| | Fringe (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | 26.13% | 25.17% | 29.30% | 27.35% | 27.35% |
| 2 | G&A (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | 17.28% | 28.96% | 32.23% | 27.42% | 109.08% |
| | Incurred Cost Submission* | | | | | |
| 3 | Wash A (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | 79.26% | 79.85% | 54.06% | 38.99% | 152.82% |
| | Incurred Cost Submission* | | | | | |
| 4 | Wash B (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | 34.70% | 14.36% | 11.94% | 15.81% | 39.52% |
| | Incurred Cost Submission* | | | | | |
| 5 | NASA TDNSWWash D (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| | Incurred Cost Submission* | | | | | |
| 5 | Alabama (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| | Incurred Cost Submission* | | | | | |
| 6 | Boston A (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| | Incurred Cost Submission* | | | | | |
| 7 | Boston B (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| | Incurred Cost Submission* | | | | | |
| 8 | Newport A (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| | Incurred Cost Submission* | | | | | |
| 9 | Newport B (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| 10 | Company's Claimed Actual Rates (ICS) | | | | | |

Copy of Final Rate Sheet As AT 12-5-2013 (No Color) xls

18

Copy of First Rate Sheet As At 12-5-2013 (the Color) ...

| No. | Years | 1996 | 1997 | 1998 | 1999 | 2000 |
|---|---|---|---|---|---|---|
| | Incurred Cost Submissions* | | | | | |
| 11 | San Antonio A (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | 62.99% | 35.13% | 39.54% | 71.81% | 122.55% |
| | Incurred Cost Submissions* | | | | | |
| 12 | San Antonio B (DCAA Proposed - 2/2011 & 12/2011) | | | | | |
| | Company's Claimed Actual Rates (ICS) | 38.22% | | 8.65% | 46.94% | 36.45% |
| 13 | Dayton A | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| 14 | Dayton B | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| | Atlanta | | | | | |
| 15 | Company's Claimed Actual Rates (ICS) | | | 10.62% | 19.67% | |
| | New Jersey A | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| 16 | New Jersey B | | | | | |
| | Company's Claimed Actual Rates (ICS) | | | | | |
| | N. Carolina A | | | | | |
| 17 | Company's Claimed Actual Rates (ICS) | 26.17% | 53.65% | 60.13% | | |
| | N. Carolina B | | | | | |
| 18 | Company's Claimed Actual Rates (ICS) | | | | | |
| | Indiana | | | | | |
| 19 | Company's Claimed Actual Rates (ICS) | | | | | |
| | Florida | | | | | |
| 20 | Company's Claimed Actual Rates (ICS) | | | | | |
| | S. Carolina - Charleston | | | | | |
| 21 | Company's Claimed Actual Rates (ICS) | | | | | |

EXHIBIT E

**Exhibit E**

**Entitlements to Contract Costs within Contract Limitations & Withholding Amounts Due**

| Number (Column No.) | ISN Project Number | A. Federal Government Contract Number (A) | B. Contract Cost Limitation with Fixed Fees (B) | C. Amounts Withheld of ISN's Allowable & Incurred Costs (C) | D. Financing Costs for Withholdings (D) | E. Amount Due to ISN from Govt. Includes Borrowing Costs (E) | F. Total Amount Due Includes corresponding increase in Fixed Fees for DCAA errors in Billing Rates (F) |
|---|---|---|---|---|---|---|---|
| 1 | 1017 | F19628-82-C-0108 * | $ 1,402,774.98 | $ 40,304.55 | $ 273,556.85 | $ 313,861.40 | $ 322,431.20 |
| 2 | 1028 | NA85-27486 | $ 3,285,619.81 | $ 178,710.93 | $ 810,736.89 | $ 989,447.82 | $ 989,447.82 |
| 3 | 1047 | MDA-908-83-D-1504 | $ 3,020,331.45 | $ 227,217.72 | $ 845,455.10 | $ 1,072,672.82 | $ 1,096,665.83 |
| 4 | 1058 | MDA903-84-C-0222 * | $ 2,960,554.25 | $ 110,127.90 | $ 653,126.80 | $ 763,254.70 | $ 763,254.70 |
| 5 | 1061 | DAAK20-84-C-0149 | $ 75,880.00 | $ 8,467.20 | $ 50,215.74 | $ 58,682.94 | $ 59,481.46 |
| 6 | 1062 | N68335-84-D-0903 | $ 195,333.69 | $ 98,113.20 | $ 526,062.09 | $ 624,175.29 | $ 624,175.29 |
| 7 | 1064 | DASG60-85-C0035 | $ 81,667.00 | $ 26,279.46 | $ 140,904.87 | $ 167,184.33 | $ 169,482.58 |
| 8 | 1077 | F19628-85-C0043 | $ 493,300.00 | $ 31,757.53 | $ 170,277.14 | $ 202,034.67 | $ 203,034.09 |
| 9 | 1079 | 5060NB-85-C-3513 | $ 2,016,388.00 | $ 56,545.12 | $ 256,521.60 | $ 313,066.72 | $ 318,501.06 |
| 10 | 1088 | DTFA01-85-Y-01018 | $ 899,509.31 | $ 30,468.36 | $ 138,222.23 | $ 168,690.59 | $ 169,436.29 |
| 11 | 1093 | R00024-85-C-5258 | $ 2,801,859.00 | $ 185,271.93 | $ 689,379.72 | $ 874,651.65 | $ 881,627.94 |
| 12 | 1102 | DLAH00-85-C-0010 | $ 10,000,000.00 | $ 363,856.82 | $ 1,353,877.56 | $ 1,717,734.38 | $ 1,717,734.38 |
| 13 | 1125 | NASW-4164 (TUSS) | $ 2,931,506.00 | $ 528,006.03 | $ 1,808,623.54 | $ 2,336,629.57 | $ 2,375,119.47 |
| 14 | 1159 | MDA903-87-C-0004 | $ 6,059,662.00 | $ 599,569.41 | $ 2,230,942.31 | $ 2,830,511.72 | $ 2,830,511.72 |
| 15 | 1179 | N66604-87-D-0098 | $ 6,386,276.18 | $ 750,951.12 | $ 2,474,162.32 | $ 3,225,113.44 | $ 3,225,113.44 |
| 16 | 1184 | MDA903-88-C-0702 | $ 2,684,574.39 | $ 186,919.15 | $ 847,974.17 | $ 1,034,893.32 | $ 1,034,893.32 |
| 17 | 2009 | DAAK70-83-C-0145 | $ 2,910,460.00 | $ 193,031.94 | $ 790,530.99 | $ 983,562.93 | $ 993,464.16 |
| | | | $ 48,205,696 | $ 3,618,598 | $ 14,060,871 | $ 17,676,169 | $ 17,776,344.75 |

20



**Exhibit F**
**Offsets**

| Number | ISN Project Number | Offsets |
|---|---|---|
| Column No: | | 0 |
| 1 | 1017 | $113.00 |
| 2 | 1028 | $28,523.00 |
| 3 | 1047 | $17,572.00 |
| 4 | 1058 | $51,222.00 |
| 5 | 1061 | $0.00 |
| 6 | 1062 | $1,068.00 |
| 7 | 1064 | $0.00 |
| 8 | 1077 | $3,504.00 |
| 9 | 1079 | $0.00 |
| 10 | 1088 | $9,086.00 |
| 11 | 1093 | $21,943.00 |
| 12 | 1102 | $23,949.00 |
| 13 | 1125 | $0.00 |
| 14 | 1159 | $10,762.00 |
| 15 | 1179 | $200,125.40 |
| 16 | 1184 | $84,604.00 |
| 17 | 2009 | $23,374.00 |
| | | $475,845.40 |

21



**Exhibit G**

**Daily Rate for Delay under Contract Disputes Act**

| Number | ISN Project Number | K. Daily Rate of Overhead Costs Incurred for delaying determination of allowability for Establishment of Indirect Rates |
|---|---|---|
| Column No: | | H |
| 1 | 1017 | $333.23 |
| 2 | 1028 | $254.54 |
| 3 | 1047 | $144.55 |
| 4 | 1058 | $911.04 |
| 5 | 1061 | $61.30 |
| 6 | 1062 | $10.34 |
| 7 | 1064 | $68.36 |
| 8 | 1077 | $61.01 |
| 9 | 1079 | $194.87 |
| 10 | 1088 | $87.35 |
| 11 | 1093 | $146.71 |
| 12 | 1102 | $193.24 |
| 13 | 1125 | $184.65 |
| 14 | 1159 | $166.16 |
| 15 | 1179 | $373.65 |
| 16 | 1184 | $664.83 |
| 17 | 2009 | $185.93 |



Exhibit H
Loss of Unabsorbed Overhead under Contract Dispute Act

| Number Column No. | IBN Project Number | I. Overhead Expenses for Govt. caused Delay |
|---|---|---|
| 1 | 1017 | $3,463,582.88 |
| 2 | 1028 | $2,236,600.02 |
| 3 | 1047 | $1,154,062.20 |
| 4 | 1058 | $9,103,525.56 |
| 5 | 1061 | $612,581.05 |
| 6 | 1062 | $99,172.74 |
| 7 | 1064 | $655,655.68 |
| 8 | 1077 | $585,183.19 |
| 9 | 1079 | $1,712,269.86 |
| 10 | 1088 | $767,508.35 |
| 11 | 1093 | $11,171,337.80 |
| 12 | 1102 | $1,542,795.13 |
| 13 | 1125 | $1,400,108.20 |
| 14 | 1159 | $1,326,585.58 |
| 15 | 1179 | $2,682,674.36 |
| 16 | 1184 | $5,839,109.17 |
| 17 | 2009 | $1,559,068.66 |
| | | $35,911,810 |



Exhibit I

Breach of Contracts - Loss of Profits claim based on estimated allocable amounts under Contract Dispute Act

| Number | ISN Project Number | Q. Allocation Percent estimate of Company's Loss of Profits (%) (Based on Regression Method) | R. Estimated Allocated Amounts of Company's Loss of Profits ($) |
|---|---|---|---|
| Column No: | | J | K |
| 1 | 1017 | 0.36% | $1,049,172.16 |
| 2 | 1028 | 0.84% | $2,457,401.51 |
| 3 | 1047 | 0.77% | $2,258,985.35 |
| 4 | 1058 | 0.75% | $2,214,275.58 |
| 5 | 1061 | 0.02% | $57,500.57 |
| 6 | 1062 | 0.05% | $146,095.18 |
| 7 | 1064 | 0.02% | $61,080.89 |
| 8 | 1077 | 0.13% | $368,951.99 |
| 9 | 1079 | 0.51% | $1,508,109.40 |
| 10 | 1088 | 0.23% | $672,766.80 |
| 11 | 1093 | 0.71% | $2,095,583.73 |
| 12 | 1102 | 1.00% | $2,928,648.98 |
| 13 | 1125 | 0.85% | $2,499,013.06 |
| 14 | 1159 | 1.54% | $4,532,179.92 |
| 15 | 1179 | 1.63% | $4,776,462.93 |
| 16 | 1184 | 0.68% | $2,007,863.43 |
| 17 | 2009 | 0.74% | $2,176,809.26 |
| | | 10.83% | $31,810,900.74 |

24

EXHIBIT J

Exhibit J

Entitlements to Statutory Interest - PPA on Unpaid Invoices & CDA Interest

| ISN Project Number | G. First Year PPA Interest for Unpaid Invoices, that were NOT in dispute at the time of issuance | H. CDA Interest (12/14/2004 until to-date) | I. Total Statutory Interest (PPA + CDA) |
|---|---|---|---|
| | J | N | N |
| 1017 | $8,536.17 | $95,351.51 | $103,887.68 |
| 1028 | $23,606.34 | $267,969.64 | $291,575.98 |
| 1047 | $48,740.26 | $309,120.92 | $357,861.18 |
| 1058 | $8,629.67 | $158,545.09 | $167,174.76 |
| 1061 | $960.09 | $18,695.24 | $19,655.33 |
| 1062 | $8,562.21 | $196,353.70 | $204,915.91 |
| 1064 | $2,620.13 | $55,441.69 | $58,061.82 |
| 1077 | $2,807.00 | $51,440.08 | $54,247.08 |
| 1079 | $12,694.94 | $94,909.39 | $107,604.33 |
| 1088 | $7,796.38 | $44,048.09 | $51,844.47 |
| 1093 | $23,261.33 | $238,414.66 | $261,675.99 |
| 1102 | $58,908.26 | $528,122.05 | $587,030.31 |
| 1125 | $46,350.65 | $658,824.05 | $705,174.70 |
| 1159 | $54,720.76 | $841,827.78 | $896,548.54 |
| 1179 | $71,864.74 | $799,748.47 | $871,613.21 |
| 1184 | $26,704.16 | $234,099.70 | $260,803.86 |
| 2009 | $21,627.06 | $272,993.05 | $294,620.11 |
| | $427,669.43 | $4,865,905.11 | $5,294,295.26 |

25